UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL G.,

                Plaintiff,                        **DECISION AND ORDER**

      v.

                                            1:23-CV-00767 EAW

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____


## INTRODUCTION

Represented by counsel, plaintiff Michael G. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for supplemental security income ("SSI").  (Dkt. 1).  This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).  Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Dkt. 5; Dkt. 9).  For the reasons discussed below, Plaintiff's motion (Dkt. 5) is denied and the Commissioner's motion (Dkt. 9) is granted.


## BACKGROUND

Plaintiff protectively filed his application for SSI on October 29, 2018.  (Dkt. 3 at 20, 113).[1]  In his application, Plaintiff alleged disability beginning January 1, 2018.  (*Id.* at

_____

[1]      When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

20, 115).   Plaintiff's application was initially denied on May 3, 2019, and on reconsideration on September 16, 2019.  (*Id.* at 20, 145, 180).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Joani Sedaca on June 29, 2021.  (*Id.* at 19, 40-69).  On May 26, 2022, the ALJ issued an unfavorable decision.  (*Id.* at 17-22).  Plaintiff requested Appeals Council review; his request was denied on June 2, 2023, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 6-12).  This action followed.

## LEGAL STANDARD

## I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he

deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   **Disability Determination**

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.   The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since October 29, 2018, the application date. (Dkt. 3 at 23).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "lumbar degenerative disc disease ('DDD'); cervical DDD; thoracic DDD; bipolar disorder; depressive disorder; anxiety disorder; post-traumatic stress disorder ('PTSD'); attention deficit and hyperactivity disorder ('ADHD'); and polysubstance abuse disorder, including opioid use disorder, stimulant use (cocaine) disorder, cannabis use disorder, and sedative, hypnotic, and anxiolytic disorder." (*Id.*). The ALJ further found that Plaintiff's

alleged headaches, asthma, and unspecified "impairment involving the hands" were non-severe. (*Id*. at 23-25).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*. at 25). The ALJ particularly considered the criteria of Listings 1.15, 12.04, 12.06, 12.11, and 12.15 in reaching her conclusion. (*Id.* at 25-29).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a), with the following additional limitations:

> [Plaintiff] can occasionally climb, stoop, crouch, kneel, balance and crawl. Can frequently reach with the dominant hand. Simple[,] routine and repetitive tasks. Occasional decision-making and changes in the work-setting, including procedures and tools. No public contact; occasional contact with coworkers, including supervisors.

(*Id.* at 29). At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 43).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of table worker, addresser, and lens inserter. (*Id.* at 44-45).[2] Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 45).

---

[2]     The Court notes that on June 22, 2024, the Commissioner issued an Emergency Message to "explain[] heightened evidentiary and articulation requirements about certain Dictionary of Occupational Titles (DOT) occupations whose continued widespread existence multiple courts have questioned." *See* Social Security Administration, EM-24027, https://secure.ssa.gov/apps10/reference.nsf/links/06212024022159PM (June 22,

**II.     The ALJ's Determination is Supported by Substantial Evidence and Free from Reversible Error**

Plaintiff asks the Court to vacate the ALJ's decision, arguing that: (1) the ALJ "fail[ed] to develop the record with a consultative examination that appears to exist, undermining the reliability of the decision"; and (2) the ALJ "fail[ed] to reconcile the State Agency Review psychologist opinions that Plaintiff could tolerate only brief and superficial contact[.]" (Dkt. 5-1 at 1).  The Court is not persuaded by these arguments, for the reasons discussed below.

**A.     Development of the Record**

Plaintiff's first argument is that "there appears to have been a [physical] consultative examination performed that is not in the record" and that "[t]he ALJ was seemingly not aware of this gap, which further calls into question the thoroughness with which she evaluated the record." (Dkt. 5-1 at 7).  In opposition, the Commissioner explains that there is no such missing physical consultative examination, and that Plaintiff's counsel has misread an SSA form in making this argument.  (Dkt. 9-1 at 8-10).  In reply, Plaintiff "respectfully withdraws the argument that there appears to be a missing consultative

---

2024).  The Emergency Message provides that as a matter policy, "an adjudicator may not cite any of the DOT occupations listed below to support a framework 'not disabled' determination or decision without additional evidence[.]" *Id.*  Addresser is one of the listed occupations.  The Emergency Message does not indicate that it applies retroactively, and Plaintiff has raised no objection to the inclusion of addresser as a representative occupation in the ALJ's decision.  Further, neither table worker nor lens inserter is an occupation listed in the Emergency Message.  The Court does not find that the Emergency Message provides any basis to disturb the Commissioner's determination under these circumstances.

examination that was not part of the record," conceding that the explanation provided by the Commissioner appears to be accurate. (Dkt. 10 at 1).

Plaintiff nonetheless argues that the "the lack of a physical examination in the records should have triggered the ALJ's duty to develop one." (*Id*. at 1-2). Plaintiff acknowledges that the record contained opinions regarding Plaintiff's physical limitations from two state agency reviewing physicians, but argues that the ALJ was required to obtain a consultative examination because she determined that these opinions (which concluded that Plaintiff was capable of ranges of medium and light work) were not persuasive. (*See* Dkt. 5-1 at 9-10).

This argument is unavailing. "The Second Circuit has rejected the argument that remand is required due to a lack of medical opinions when 'the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity.'" *Keller v. Comm'r of Soc. Sec.*, 394 F. Supp. 3d 345, 352 (W.D.N.Y. 2019) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013)). "Moreover, under certain circumstances, particularly where the medical evidence shows relatively minor physical impairment, an ALJ permissibly can render a common-sense judgment about functional capacity even without a physician's assessment." *Id*.

The evidence in this case amply supports the conclusion that Plaintiff's physical impairments were minor. As the ALJ explained in detail, Plaintiff was in a motor vehicle accident in October 2017 and reported sustaining injuries to his neck, right shoulder, and mid- to low back. (Dkt. 3 at 31). When Plaintiff was seen in the emergency room immediately following this accident, he had mild tenderness, normal range of motion,

steady gait, and no neurologic deficits.  (*Id*. at 32, 751-60).  X-rays of his lumbar and cervical spine were unremarkable.  (*Id*. at 374-75).

Subsequent imaging of Plaintiff's lumbar, thoracic, and cervical spine showed some evidence of degenerative disc disease.  (*Id*. at 664-85; 727-32).  Nerve conduction studies and needle EMG studies of the upper and lower extremities were all within normal limits and showed no evidence of radiculopathy, plexopathy, entrapment neuropathy, or peripheral neuropathy.  (*Id*. at 475-77).  And, as detailed by the ALJ, physical examinations by various medical professionals throughout the relevant time period showed "relatively minimal findings," with improvement over time.  (*Id*. at 33-35).  In June 2020, Plaintiff had a normal range of motion, normal gait, and normal motor strength and sensation.  (Dkt. 4 at 392).  In February 2021, he denied any neck or back pain, and had a normal range of motion in his neck and extremities, normal gait, and normal motor strength and sensation.  (*Id*. at 427-28).  In April 2021, he had normal gait without assistance, no neurologic defects, unremarkable examinations of the cervical spine and musculoskeletal systems, and denied experiencing any musculoskeletal or neurological symptoms.  (*Id*. at 718-22).

The ALJ also noted that Plaintiff's medical records reflected his performance of physical activities such as basketball, volleyball, and dodgeball, and that he informed his addiction therapist in May 2019 that he enjoyed sports, hockey, taking vacations, and being outdoors.  (Dkt. 3 at 35).  Plaintiff further reported to his psychiatric provider in April 2018 that he had spent a week in Las Vegas on business, during which he had worked many hours looking at real estate.  (*Id*.).

Plaintiff argues that "the record supports that Plaintiff could readily have difficulty performing the sitting of sedentary work" and that the ALJ failed to explain how she determined that he "would be capable of sitting for the six hours necessary for sedentary work." (Dkt. 5-1 at 11). This argument lacks merit. Plaintiff cites no medical opinion indicating that he is incapable of sitting for six hours, but relies on his own testimony and self-reports regarding the need to switch positions. (*Id.*). The ALJ explained in detail why she found Plaintiff's statements inconsistent with the evidence of record. The ALJ was not obliged to credit Plaintiff's testimony, which was inconsistent with the evidence discussed above demonstrating that his physical impairments were relatively minor.

In sum, the ALJ was well within her discretion to determine that a consultative examination was not necessary under the circumstances of this case. The limitations she assessed are consistent with the evidence of record showing only minor physical impairments and little lasting impact from the motor vehicle accident in October 2017.

## B.   Ability to Tolerate Contact

Plaintiff's second and final argument is that the ALJ's determination that he could tolerate occasional contact with coworkers, including supervisors, was inconsistent with the state agency reviewing psychologists' opinions that he could tolerate "brief and superficial" contact with co-workers, and that the ALJ failed to explain the discrepancy, requiring remand. (Dkt. 5-1 at 12-13). The Court disagrees that remand is required on this basis.

"There . . . [is] a divergence of opinion as to whether a limitation to brief and superficial interaction with others is the functional equivalent of a limitation to occasional

contact." *Maria M. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00962-TPK, 2024 WL 33210, at *3 (W.D.N.Y. Jan. 3, 2024). Decisions from within this District have reached different conclusions on this issue. *Compare Maria M.*, 2024 WL 33210, at *3 (concluding that the terms are not equivalent (collecting cases)) *with Ward v. Comm'r of Soc. Sec.*, No. 18-CV-1317-FPG, 2020 WL 3035850, at *3 (W.D.N.Y. June 5, 2020) ("[M]any courts have found that where, as here, an ALJ properly gave considerable weight to a medical opinion stating a claimant's ability to handle brief and superficial contact, an RFC containing a limitation to 'occasional interaction' is supported by substantial evidence." (collecting cases)).

There are colorable arguments on both sides of this dispute. But in reviewing the Commissioner's determination, the Court is not called upon to review the evidence *de novo* or to ascertain the best interpretation thereof. "If [the] evidence is susceptible to more than one <u>rational</u> interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (emphasis added). An ALJ in a particular case may rationally conclude that "brief and superficial" contact and "occasional" contact are functionally equivalent. *See Shaibi v. Berryhill*, 883 F.3d 1102, 1107 (9th Cir. 2017) (finding "no obvious inconsistency" between an opinion that the plaintiff was moderately limited in his interactions with coworkers and could "relate to others on a superficial work basis" and the ALJ's RFC finding that the plaintiff was capable of occasional interaction with coworkers); *see also Schmidt v. Kijakazi*, No. 21-CV-0319-BHL, 2022 WL 17584173, at *3 (E.D. Wis. Dec. 12, 2022) ("In most circumstances, a reasonable person could safely

assume that the superficiality of contacts has some reasonable correlation with their frequency, especially in the workplace.").

"A per se rule requiring reversal and remand whenever an ALJ conflates 'occasional' and 'superficial' is, therefore, at odds with the highly deferential substantial evidence standard, which itself demands nothing more than 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Schmidt*, 2022 WL 17584173, at *3 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)).  In this case, the state agency reviewing psychologists opined that Plaintiff would have only moderate limitations in his ability to interact adequately with co-workers and supervisors (*see* Dkt. 3 at 119, 133), which is fully consistent with a limitation to occasional contact, *see Cynthia A. E. v. Comm'r of Soc. Sec.*, No. 5:22-CV-0974 MAD DEP, 2023 WL 9116628, at *8 (N.D.N.Y. Oct. 17, 2023) ("A moderate limitation in interaction can be reasonably interpreted as an ability to occasionally interact."), *adopted*, 2023 WL 8432332 (N.D.N.Y. Dec. 5, 2023).  Consultative examiner Dr. Gregory Fabiano reached the same conclusion. (Dkt. 3 at 569).  Under these circumstances, it was not irrational for the ALJ to conclude that Plaintiff was capable of occasional contact with his co-workers and supervisors.  *See Cynthia A.*, 2023 WL 9116628, at *8 ("[W]hile the state agency sources did opine a limitation to brief and superficial contact, their opinion was not the only opinion on which the ALJ relied.  Rather, he found that Dr. Valencia-Payne's opinion was also persuasive to the extent it opined a moderate limitation in, as relevant here, plaintiff's ability to interact with others.").  The Court finds no basis to disturb the Commissioner's determination.

**CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 9) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 5) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: July 31, 2024
       Rochester, New York